IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Phillip Hayes,

        Plaintiff,

v.                                  Case No. 13-2322-JWL

Unified Government of Wyandotte
County/Kansas City, Kansas,

        Defendant.

## MEMORANDUM & ORDER

Plaintiff Phillip Hayes filed this lawsuit against his former employer asserting claims of racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and 42 U.S.C. § 1983.  This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 85).  As explained below, the motion is granted.

## I.    Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party.  Defendant Unified Government of Wyandotte County/Kansas City, Kansas is a municipality organized and existing under the laws of the state of Kansas.  Plaintiff Phillip Hayes, an African-American male, began his employment with defendant in February 2004 as a Laborer Water Serviceman within the Water Operations Division of the Board of Public Utilities (BPU).  Plaintiff ultimately advanced to the

position of Lead Person.  The BPU, one of defendant's administrative agencies, is a municipally-owned utility which supplies electricity and drinking water to the residents of Kansas City, Kansas.

During his employment with BPU, plaintiff was permitted to perform side jobs outside of his BPU working hours and plaintiff, as "Hayes Plumbing," performed private contract plumbing work for BPU customers.  Relevant to this case, plaintiff, on September 24, 2011, reconnected water service from the main water line to a BPU customer's residence in Kansas City, Kansas.  This work was performed by plaintiff as Hayes Plumbing and not as a BPU employee.  The materials that plaintiff supplied to reconnect the customer's water service included a meter yoke, copper piping and a white plastic barrel.

When water service is connected in Kansas City, Kansas, it must be inspected by BPU employees prior to the BPU restoring water service.  Toward that end, plaintiff, after reconnecting water service on September 24, 2011, called the BPU to have his work inspected. When a BPU employee arrived to inspect the work, the employee realized that plaintiff had not obtained the necessary permit to perform the work and that the permit had not been obtained until September 26, 2011, after the work was performed.  Moreover, the permit was obtained by Dove Construction rather than by plaintiff.

When he learned that plaintiff did not obtain a permit for the work, Steve Green, BPU's director of Water Distribution, asked Karen Jones, a supervisor in the Water Distribution Department, to inspect the work and to take pictures of the work.  After reviewing the photographs, Mr. Green observed that the materials used by plaintiff for the work were the same materials used by the BPU at that time, including a "Mueller" branded meter yoke.  At that

2

point, Mr. Green asked a BPU employee responsible for building security to determine whether any surveillance or records from the BPU facility where plaintiff worked showed any activity by plaintiff on September 24, 2011.  Computer logs obtained by that employee indicated that plaintiff entered the BPU facility through a side door on September 24, 2011 despite the fact that plaintiff was not scheduled to work that day for BPU and in fact did not perform work at BPU that day.

Mr. Green reviewed video surveillance of the facility for September 24, 2011 and observed plaintiff accessing his work truck and removing a white Tyvek suit from the truck. According to Mr. Green's affidavit, Mr. Green believes, based on the manner in which plaintiff was carrying the Tyvek suit, that plaintiff was using the suit to conceal additional items that he removed from the truck and that those items appeared to be wrapped in the suit.  Mr. Green avers that, based on his knowledge concerning the shape and size of a meter yoke, he believed that plaintiff was concealing a meter yoke underneath the Tyvek suit.  Mr. Green further avers that Mueller meter yokes were stored on plaintiff's work truck.

At that point, Mr. Green met with plaintiff to inquire about the work he had performed on September 24, 2011.  During that meeting, plaintiff advised Mr. Green that he had purchased the material he used for the work at KC Winnelson, a plumbing hardware store located in Kansas City, Kansas.  Mr. Green asked plaintiff to provide receipts for his purchases, but he did not do so.  Mr. Green avers that, based on his prior experience working with KC Winnelson, he knew that KC Winnelson did not sell Mueller branded products.  Nonetheless, he contacted KC Winnelson to inquire whether they had sold any material, including a meter yoke, to plaintiff or to Dove Construction.  KC Winnelson advised Mr. Green that it had not sold any material to

3

plaintiff or Dove Construction.  Mr. Green avers that he also contacted Mainline Supply, another plumbing hardware store located in Kansas City, Kansas, because Mainline Supply was the only local store that he knew that stocked and sold Mueller parts.  Mainline Supply advised Mr. Green that they had not supplied any Mueller meter yokes to plaintiff or to Dove Construction. Mr. Green then had a second meeting with plaintiff.  At that meeting, plaintiff stated that the BPU customer who resided at the home where he performed the work had provided the materials that plaintiff used in the water service reconnection.  Mr. Green then followed up with the BPU customer, who advised Mr. Green that she did not provide the materials and that she was invoiced by plaintiff for the materials.  It is undisputed that the BPU customer paid plaintiff $1000.00 for the work he performed at the residence.

Mr. Green avers that, based on the sum of the information he gathered during his investigation, he determined that plaintiff had stolen a Mueller meter yoke, concealed it with the Tyvek suit, and then used that meter yoke to renew water service for the outside job he performed.  As a result, Mr. Green made the decision to terminate plaintiff's employment for violating Rule 17 of the BPU employee handbook, which provides that an employee who commits theft of BPU property may be terminated for a first offense.  Plaintiff's employment was terminated on October 6, 2011.

As part of his lawsuit, plaintiff asserts that his employment was terminated in retaliation for a prior complaint of racial discrimination lodged by plaintiff concerning a retirement party held at BPU on October 30, 2008—nearly three years prior to plaintiff's termination.  At that retirement party, a Caucasian BPU employee used a Tyvek suit to dress up as a member of the Ku Klux Klan.  BPU's Director of Human Resources avers that the employee was disciplined

4

with a one-week suspension; a one-year probationary period; and mandatory sensitivity training. Plaintiff testified that he complained to Mr. Green about the incident immediately following the party.  Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.      Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed.R.Civ.P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III.     Racial Discrimination Claim

In the pretrial order, plaintiff contends that defendant terminated his employment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et

seq., and in violation of 42 U.S.C. §§ 1981 and 1983.[1]  As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).  Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id*.  To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination."  *Id*. (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).  If he establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*.  If defendant meets this burden, summary judgment against plaintiff is warranted unless he introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent."  *Id*. (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

In its motion for summary judgment, defendant does not address the elements of plaintiff's prima facie case—it argues only that plaintiff has failed to come forward with evidence sufficient to cast doubt on defendant's proffered reason for plaintiff's termination.  The court, then, analyzes whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for the employment decisions.  "This burden is one of production, not

---

[1] In its motion, defendant suggests that plaintiff has asserted a separate claim for relief based on a July 21, 2010 disciplinary memorandum.  No such claim is preserved in the pretrial order and plaintiff does not mention this claim in his response to the motion for summary judgment.  To the extent plaintiff ever intended to assert such a claim, he has now either waived it or abandoned it.  *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims not included in the pretrial order are waived).

persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id.*  According to defendant, it terminated plaintiff based on its determination that plaintiff stole BPU property in violation of BPU company rules.  The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F .3d 1134, 1150 (10th Cir. 2011) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).  A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011).  In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald–Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

In an effort to establish pretext, plaintiff contends primarily that defendant treated similarly situated Caucasian employees differently—*i.e.*, that defendant failed to terminate the

7

employment of Caucasian employees for similar violations of company policy.  He first highlights the Caucasian employee who dressed as a Ku Klux Klan member at the retirement party and, according to plaintiff, stole a Tyvek suit to do so.  The record, however, does not permit the inference that plaintiff is similarly situated to this employee.  Defendant determined that plaintiff stole company property and used it for personal financial gain in connection with his outside employment.  There is no evidence that defendant ever determined that the Caucasian employee committed theft; rather, the evidence demonstrates that defendant's concern with the Tyvek suit incident was the racially insensitive use of the suit, not the fact that the employee had stolen the suit or otherwise used it without permission.  Similarly, the evidence does not suggest that the employee at the retirement party derived any financial gain from the use of the Tyvek suit.  Moreover, the incident concerning plaintiff also involved plaintiff's efforts to hide his misconduct from his supervisors—he did not admit to taking the items and apparently made efforts to conceal that fact.[2]  There is no evidence that the incident concerning the Caucasian employee involved any dishonesty on the part of the employee.  In these circumstances, no reasonable jury could infer pretext based on any differential treatment between plaintiff and the employee who dressed as a Ku Klux Klan member at the retirement party.  *See Rivera v. City & County of Denver*, 365 F.3d 912, 923–24 (10th Cir. 2004) (comparison to other employees did not create genuine issue regarding pretext where

---

[2] For purposes of defendant's motion, it matters not whether plaintiff in fact stole the items from defendant.  What matters is whether defendant or, more specifically, Mr. Green, honestly believed that plaintiff had stolen the items and made his decision based on that belief.  *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (in analyzing pretext, court examines facts as they appear to the person making the decision and whether that person honestly believed those reasons and acted in good faith upon those beliefs).  Plaintiff does not contend that Mr. Green did not honestly believe that plaintiff committed theft.

misconduct by other employees could reasonably be viewed as less serious than the dishonesty displayed by plaintiff).

Plaintiff also references a Caucasian employee who allegedly took a large number of BPU tools to his private residence without permission. According to plaintiff, when the tools were discovered missing and a subsequent investigation revealed that the employee had taken the tools, the employee admitted that he had taken the tools and he was permitted to return to work. The court rejects this attempt to establish pretext. Plaintiff sets forth no evidence whatsoever supporting these allegations—he simply includes this reference in his response without any citation to the record and without attaching any exhibits to his response. But even if the court accepts these facts as true, they would not permit an inference of pretext in the absence of any evidence that the employee, like plaintiff, used the tools for personal financial gain. Moreover, the court finds it significant that this employee, unlike plaintiff, confessed to the misconduct when approached by defendant.

Plaintiff (again without citation to the record or submitting evidence in support) next contends that "several Caucasian employees were discovered drinking alcohol" on duty and yet were not terminated despite this "egregious violation" of company policy. This, too, fails to establish pretext. There is no evidence concerning when these alleged violations occurred, who supervised these employees, who made the decision not to discipline the employees, or any other circumstances surrounding the alleged incident. Moreover, there is no evidence as to whether the employees had previously violated BPU's substance abuse policy, a signification omission in light of the fact that the employee handbook reveals that termination is not required or even suggested for a first offense of the substance abuse policy. There is also no suggestion

9

that the offenses committed by these employees involved any element of dishonesty or that the employees stood to benefit financially from their misconduct.   Plaintiff, then, has not sufficiently demonstrated that these employees are similarly situated to him for purposes of establishing pretext.  *See Smothers v. Solvay Chems., Inc*., 740 F.3d 530, 540-41 (10th Cir. 2014) (for employee to be "similarly situated" to plaintiff, he or she must share the supervisor or decision maker and have engaged in conduct of comparable seriousness).

Lastly, plaintiff emphasizes that there "was never a police investigation into the alleged theft."   The fact that the police were not involved in the incident is simply not relevant, particularly where plaintiff does not contend that Mr. Green's investigation was flawed in any respect.   And even if a police investigation revealed that plaintiff did not commit theft, that determination would not establish pretext because there is no suggestion that Mr. Green, in making the termination decision, did not honestly believe that plaintiff stole company property. *See supra* note 2.   Because plaintiff has failed to raise a triable issue of pretext as to his discrimination claim, the court grants summary judgment in favor of defendant on this claim.[3]

## IV.   Retaliation Claim

Title VII makes it unlawful for an employer to retaliate against an employee because he or she has opposed any practice made an unlawful employment practice by those statutes.  42 U.S.C. § 2000e–3(a).   The court assesses plaintiff's retaliation claim under the *McDonnell*

---

[3] The elements of plaintiff's case are the same whether that case is brought under § 1981, § 1983 or Title VII.  *Carney v. City & County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).   Thus, plaintiff's §§ 1981 and 1983 racial discrimination claims fail for the same reasons that his Title VII claim fails.

*Douglas* framework. *Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff "must show (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Id.* (quoting *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1202 (10th Cir. 2008)). If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for its employment action. *Debord v. Mercy Health Sys. of Kansas, Inc*., 737 F.3d 642, 655 (10th Cir. 2013). Plaintiff, then, must show that defendant's stated reason is pretextual. *Id.*

According to plaintiff, defendant terminated plaintiff's employment in retaliation for plaintiff's October 30, 2008 complaint about the incident at the retirement party. Defendant contends that summary judgment is warranted on plaintiff's retaliation claim because plaintiff cannot establish a prima facie case of retaliation and, in any event, cannot show that defendant's stated reason for the termination decision is pretextual. As will be explained, the court concludes that, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could return a verdict for plaintiff on his retaliation claim. Summary judgment, then, is granted in favor of defendant on this claim.

A.    *Prima Facie Case*

In its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of retaliation because he cannot establish that he engaged in protected opposition to discrimination because the only individual to whom plaintiff allegedly complained

was not working at the time plaintiff allegedly made the complaint.  The court agrees that plaintiff has failed to raise a genuine factual dispute on this issue.  In his deposition, plaintiff testified that he told Steve Green in the hallway immediately after the retirement party that he "didn't like what [he] saw" at the party.  Mr. Green avers, however, that he was not present at work on October 30, 2008 in light of a family medical issue and that he did not return to work until Monday, November 3, 2008.  Time sheets supplied by defendant further support Mr. Green's affidavit.  Plaintiff does not dispute this evidence in any respect and has come forward with no evidence suggesting that he possibly complained to Mr. Green after he returned to work the week following the retirement party or that he possibly complained to some employee other than Mr. Green immediately after the party.  Indeed, in his response to the motion for summary judgment, plaintiff does not address this issue in any respect.  On this record, no reasonable jury could conclude that plaintiff complained to Mr. Green about racial discrimination in the workplace.  *See Davis v. Unified School Dist. 500*, 750 F.3d 1168, 1172-73 (10th Cir. 2014) (summary judgment appropriate on retaliation claim where plaintiff failed to come forward with evidence that decision maker had knowledge of protected activity);

Even if plaintiff's evidence was sufficient to raise a triable issue on whether he complained to Steve Green about the retirement party, his claim nonetheless fails because, as defendant argues, he has not come forward with evidence sufficient to establish a causal connection between his complaint and his termination.  As defendant highlights, Mr. Green terminated plaintiff's employment nearly three years after plaintiff's October 30, 2008 complaint of discrimination.  Given the significant length of time between plaintiff's complaint and his termination, no reasonable jury could infer a retaliatory motive.  Stated another way, the

12

mere fact that defendant terminated plaintiff's employment three years after plaintiff raised a concern about racial discrimination, without more, is wholly insufficient to establish the requisite causal connection. *Alvarado v. Donley*, 490 Fed. Appx. 932, 938 (10th Cir. 2012) (three-year gap between protected activity and termination tends negates rather than suggests a causal connection); *Ford v. Donley*, 485 Fed. Appx. 305, 309 (10th Cir. 2012) (failure to promote plaintiff three years after filing EEOC charge too remote to create a triable issue of retaliation); *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999) (plaintiff failed to demonstrate causal connection between her protected activity of complaining about alleged bias in earlier interview process for one position and adverse employment decisions leading to her rejection for second position two years later); *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982) (plaintiff failed to establish prima facie case of retaliation where three years passed between the filing of her charges and her termination).  Plaintiff sets forth no additional evidence to establish the causation element of his claim.[4]  For this additional reason, then, summary judgment is warranted on plaintiff's retaliation claim.

B.     *Pretext*

Because plaintiff has not come forward with evidence sufficient to permit a jury to conclude that plaintiff has established a prima facie case of retaliation, the court need not address whether plaintiff has come forward with evidence that might cause a jury to determine

---

[4] In response to defendant's arguments concerning plaintiff's prima facie case of retaliation, plaintiff inexplicably argues only that the court cannot require plaintiff, as part of his prima facie case, to disprove defendant's proffered reason for terminating his employment.  But defendant does not rely to any extent on its proffered reason for terminating plaintiff's employment in connection with its argument that plaintiff has failed to establish a prima facie case.

that defendant's proffered reason for plaintiff's termination is unworthy of belief.  Nonetheless, in an abundance of caution, the court reaches the pretext issue and, for the same reasons discussed above in connection with plaintiff's discrimination claim, concludes that summary judgment is appropriate on this issue as well.

As noted earlier, defendant contends that it terminated plaintiff's employment after BPU determined that plaintiff stole BPU property (the meter yoke and the Tyvek suit) in violation of company rules.  Plaintiff suggests that this reason is pretextual by vaguely referencing "a pattern of retaliatory conduct" that purportedly began after his discrimination complaint and culminated in his discharge.  Plaintiff does not assert any facts supporting an alleged pattern of retaliatory conduct and the record reveals none.[5]  Other than that, plaintiff simply points to the same evidence that he relied on in attempting to show that defendant's reason for terminating his employment was a pretext for racial discrimination.  Thus, plaintiff's retaliation claim fails on the same ground as his discrimination claim—he has failed to present evidence from which a reasonable jury could conclude that defendant's reason for termination his employment was pretextual.  For the foregoing reasons, the court grants summary judgment in favor of defendant on plaintiff's retaliation claim.[6]

---

[5] In his response, plaintiff states that he was disciplined for failing to report to work during an emergency but other employees "who were in similar situations" were not disciplined and were excused from having to work.  To the extent plaintiff intends to suggest that this comparison establishes pretext on the retaliation claim, it does not.  There is no evidence or allegation that these employees did not engage in protected activity; that this incident occurred close in time to plaintiff's complaint; or that the person who disciplined plaintiff had knowledge of any discrimination complaint by plaintiff.

[6] Because the court grants summary judgment on plaintiff's Title VII retaliation claim for failure to establish a prima facie case and failure to show pretext, plaintiff's §§ 1981 and 1983 claims

14

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment on all claims (doc. 85) is granted.

**IT IS SO ORDERED.**

Dated this 17th day of July, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

are similarly defeated because they too are subject to the McDonnell Douglas burden-shifting analysis. *See Estate of Bassatt v. School Dist. No. 1 in the City & County of Denver*, 775 F.3d 1233, 1242 (10th Cir. 2014).